UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTIAN MARTIN BOYLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-117-G |
| | ) |
| FEDERAL EXPRESS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Christian Martin Boyle initially filed this action in state court, raising various claims arising from his employment with Defendant Federal Express Corporation. Defendant removed the action to this Court on February 17, 2021, and Plaintiff has twice since amended his pleading. Now before the Court is Defendant's Motion to Dismiss (Doc. No. 24) the Second Amended Complaint ("Complaint," Doc. No. 17), to which Plaintiff has responded (Doc. No. 25).

*I.     Summary of the Pleadings*

Citing federal and Oklahoma law, Plaintiff's Complaint raises an assortment of claims against Defendant: (1) gender discrimination under Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e et seq.; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; (3) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 et seq.; (4) religious discrimination under Title VII; (5) national origin discrimination under Title VII; (6) state-law fraud; (7) state-law interference with a protected property interest;

(8) state-law breach of fiduciary duty; (9) state-law intentional interference with emotional distress; (10) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (11) violation of the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13; (12) state-law breach of contract; and (13) state-law conversion. *See* Compl. ¶¶ 12-57.

## II.     *Defendant's Motion to Dismiss*

Citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant seeks dismissal of Plaintiff's claims in their entirety for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192. A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and

citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### A. Plaintiff's Title VII Claims

Defendant first argues that Plaintiff's Title VII claims of discrimination based upon gender, religion, and national origin—Claims One, Four, and Five—should be dismissed due to Plaintiff's failure to exhaust his administrative remedies prior to bringing suit. *See* Def.'s Mot. at 10-12.

Pursuant to 42 U.S.C. § 2000e-5(e)(1), a plaintiff must exhaust administrative remedies prior to filing a Title VII claim challenging an unlawful employment practice. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018); *see also Douglas v. Norton*, 167 F. App'x 698, 704-05 (10th Cir. 2006).

> A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter. That requirement, known as the exhaustion rule, derives from two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance.
>
> To advance these purposes . . . [a] plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC. The EEOC charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim. This court has held, time and again, that the reasonable and likely scope of the investigation is determined by the allegations contained in the Charge itself, rather than in the Charge and any responsive documents.

*Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (omission and alteration in original) (emphasis, citations, and internal quotation marks omitted).

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (or "EEOC"). *See* EEOC Charge, Def.'s Mot. Ex. 1 (Doc. No. 24-1).[1] On the form, however, he checked the boxes alleging "retaliation," "age," and "disability" discrimination, leaving blank any boxes that would reasonably reference discrimination on the basis of gender, religion, or national origin. *See id.* at 1. Further, Plaintiff's factual averments to the EEOC are devoid of any reference to discrimination on these bases. *See id.* at 1-2. Accordingly, although the Court construes the EEOC Charge "liberally," it agrees with Defendant that the alleged conduct underlying Claims One, Four, and Five would not "fall within the scope of an EEOC investigation [that] would reasonably grow out of the charges actually made in the EEOC charge." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (alteration and internal quotation marks omitted); *see also Sanderson*, 976 F.3d at 1170.

Plaintiff responds to Defendant's Motion by supplying nearly four pages of conclusory allegations that he states should have been included in the Complaint regarding his exhaustion effort. *See* Pl.'s Resp. at 4-8. The gist of these broad allegations is that Plaintiff should not be penalized for failing to check all of the applicable boxes on the EEOC Charge because the facts supplied by Plaintiff provided a sufficient basis to trigger

---

[1] Because the EEOC Charge and EEOC Notice (*see infra*) are referenced in the Complaint and central to both Plaintiff's claims and Defendant's affirmative defenses, the Court may consider the documents in determining whether dismissal is proper. *See* Compl. ¶¶ 10-11; *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

an agency investigation as to gender, religion, and national origin discrimination. *See id.* at 4-5. As stated above, however, the facts set forth by Plaintiff to the EEOC do not touch upon these matters and would not reasonably have apprised the agency of such alleged conduct. *See* EEOC Charge at 1-2. Even assuming Plaintiff's pleading was again amended to include this language, the EEOC Charge cannot be found to have fulfilled the notice and conciliation purposes of the exhaustion requirement. *See Sanderson*, 976 F.3d at 1170. Claims One, Four, and Five are therefore subject to dismissal on this basis.

### *B. Plaintiff's ADA and ADEA Claims*

In an ADEA or ADA case, the aggrieved person may bring a civil action within 90 days after notice has been given that the EEOC is not taking action and that the person has a right to sue. *See* 29 U.S.C. § 626(e); 42 U.S.C. § 12117(a) (citing 42 U.S.C. § 2000e-5); *see also Panicker v. Compass Grp. U.S.A. Inc.*, 712 F. App'x 784, 785 (10th Cir. 2017) (noting that the 90-day time limit is not jurisdictional but is a condition precedent to suit).

The EEOC issued its right-to-sue letter ("EEOC Notice") on April 6, 2018. *See* EEOC Notice, Def.'s Mot. Ex. 2 (Doc. No. 24-2). Although the record does not reflect when Plaintiff received the Notice, it is undisputed that Plaintiff timely filed his first lawsuit raising his discrimination claims ("*Boyle I*") on July 3, 2018. Def.'s Mot. at 7-8 (noting that the suit was filed 88 days after the EEOC Notice was issued). That suit, initially filed in Cleveland County District Court, was removed to this Court on July 24, 2018. *See Boyle v. FedEx Corp.*, No. CIV-18-715-C (W.D. Okla.). On June 17, 2019, *Boyle I* was dismissed without prejudice after Plaintiff failed to comply with the Court's

order regarding discovery.  *See Boyle I*, 2019 WL 2503967, at *1 (W.D. Okla. June 17, 2019).

On June 17, 2020, Plaintiff filed the instant lawsuit in Cleveland County District Court.  *See* Pet. (Doc. No. 1-1).  Defendant argues that Plaintiff's Claims Two and Three, alleging discrimination on the basis of age and disability, are subject to dismissal due to Plaintiff's failure to timely bring suit after receiving his right-to-sue letter from the EEOC.  *See* Def.'s Mot. at 12-14.  Specifically, Defendant asserts that the initiation of this lawsuit on June 17, 2020, took place over 800 days from the issuance of the EEOC Notice and that Plaintiff's efforts in *Boyle I* and state savings provisions did not toll the 90-day limitation period.  *See id.* at 13-14 (citing *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959 (10th Cir. 1991), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

In *Brown*, the Tenth Circuit explained that "as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought."  *Brown*, 926 F.2d at 961.  The Court went on to hold that "[i]n the absence of a statute to the contrary, the limitation period is not tolled during the pendency of the dismissed action" and that "the filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII."  *Id.*

Plaintiff responds that because *Boyle I* was not voluntarily dismissed as were the prior lawsuits in *Brown*, the rule pronounced in that decision is inapplicable.  *See* Pl.'s Resp. at 8.  Contrary to Plaintiff's assertion, the Tenth Circuit has applied the no-tolling rule even when, as here, dismissal of the previous lawsuit was not voluntarily sought by

6

the plaintiff. *See Scott v. Boeing Co.*, 48 F. App'x 730, 731-32 (10th Cir. 2002) (finding no tolling of the 90-day statutory period when the plaintiff's previous lawsuits were both dismissed for failure to effect service). District courts in this circuit have held likewise. *See, e.g.*, *Collins v. McHugh*, No. 14-CV-526, 2015 WL 4111324, at *2 (E.D. Okla. July 7, 2015); *Smith v. Brownlee*, No. 03-CV-929, 2004 WL 7337683, at *6 (D.N.M. July 9, 2004).

Further, even if the Court were to toll the 90-day period during the pendency of *Boyle I*, Plaintiff would still be out of time: approximately 88 days already had elapsed prior to the filing of that lawsuit in 2018, and another 366 days elapsed between the dismissal of *Boyle I* and the filing of this case. "[S]tate tolling and saving provisions are not applicable" to the federal 90-day limitation period. *Brown*, 926 F.2d at 961.[2]

Plaintiff's Claims Two and Three therefore shall be dismissed as untimely filed.

### C. Plaintiff's RICO Claim

Subsection 1962(c) of RICO prescribes that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

---

[2] Plaintiff does not argue that he is entitled to equitable tolling, and no basis for such tolling is established by the record in this matter. *See Scott*, 48 F. App'x at 732.

activity." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (internal quotation marks omitted).

> "RICO broadly defines 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (quoting 18 U.S.C. § 1961(4)). . . . .
>
>     . . . .
>
> To state a plausible RICO claim, the "person" and the "enterprise" engaged in racketeering activities must be distinct entities. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001); *George*, 833 F.3d at 1249; *Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144, 1146 (10th Cir. 1998). Also, "it's true that a defendant corporation, acting through its subsidiaries, agents, or employees typically can't be both the RICO 'person' and the RICO 'enterprise.'" *George*, 833 F.3d at 1249 (citing *Brannon*, 153 F.3d at 1149 (further citations omitted)).

*Tronsgard v. FBL Fin. Grp.*, 312 F. Supp. 3d 982, 994-95 (D. Kan. 2018) (alteration in original).

Defendant asserts that the Complaint fails to plausibly state a violation of RICO because "Plaintiff does not identify the 'person' and merely alleges one 'enterprise.'" Def.'s Mot. at 17. Defendant therefore argues that Plaintiff does not allege facts to show a RICO "enterprise" distinct from the "person" who was employed by or associated with that enterprise. *See* Def.'s Mot. at 16-18; 18 U.S.C. § 1962(c); *George*, 833 F.3d at 1249.

Plaintiff's RICO allegations are vague and largely conclusory, referring to unidentified "Defendants and their agents" as both constituting and associating with an unidentified "enterprise" and engaging in an unidentified fraudulent "scheme to defraud." Compl. ¶¶ 41-48; *see, e.g.*, *id.* ¶¶ 43 ("Defendants devised, participated and conspired with

8

others in practices, schemes, artifices, devices and conduct which constitute a pattern of racketeering activity . . . ."), 44 (Defendants and their agents, individually or in an association . . . , constitute an enterprise . . . ."). Even considering the "General Facts" presented at the outset of the Complaint and incorporated into these allegations (*id.* ¶¶ 4-11), Plaintiff fails to sufficiently allege a RICO enterprise that is "distinct" from the employed or associated person. The Complaint therefore fails "to raise a right to relief above the speculative level" on this RICO claim, and Claim 10 shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Twombly*, 550 U.S. at 555.

### D. Plaintiff's Robinson-Patman Act Claim

The Robinson-Patman Act states the following:

> Payment or acceptance of commission, brokerage or other compensation. It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C. § 13(c).

In Claim Eleven, Plaintiff alleges that Defendant violated the statute as follows:

> 49. Defendants engaged in interstate commerce and in the course of such commerce paid to agents and employees of Defendant commissions or compensation in the form of secret payments, excessive payments or bribes to induce these agents and employees of Defendant to issue opinions and decisions to provide fraudulent documentation to justify the decision to terminate Plaintiff.
>
> 50. Such payments constitute commercial bribery, a per se violation of [15

U.S.C. § 13(c)].

Compl. ¶¶ 49-50.

Defendant argues that Plaintiff fails to adequately plead this claim because "the Complaint is devoid of a transaction involving the sale of goods, wares, or merchandise" and "commercial bribery that does not involve goods" does not establish an RPA violation. Def.'s Mot. at 18-19; *see Fiore v. Kelly Run Sanitation, Inc.*, 609 F. Supp. 909, 916 (W.D. Pa. 1985) (holding that to allege an action under 15 U.S.C. § 13(c) "the complaint must state that transactions between the parties constitute a sale of goods, wares, or merchandise and not merely a contract for services" (internal quotation marks omitted)); *accord May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980); *see also Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 142 (5th Cir. 1987) (explaining that kickbacks received in connection with an agreement for services "fall outside the [RPA's] commercial bribery reach").

Plaintiff does not dispute Defendant's point but responds, "It is anticipated Discovery will reveal that what Defendant calls a 'Service,' it actually calls its 'Product.'" Pl.'s Resp. at 9. Plaintiff may not rely upon possible future discovery in this manner, however; he is obligated to plead facts that "support[] all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). It is not proper for the Court to assume that Plaintiff can prove facts he has not alleged or that Defendant has violated the law in ways that have not been alleged. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Having reviewed the pleading, the Court concurs that Plaintiff fails to state a claim for violation of the RPA upon which relief can be granted. Claim Eleven shall be dismissed.

### E. Plaintiff's Claim for Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress ("IIED") alleges that Defendant "acted outrageously and with the intention of inflicting emotional distress on Plaintiff in an effort to break Plaintiff's spirit and will and force him to waive his legal rights to compensation." Compl. ¶ 39. Plaintiff alleges that Defendant "accused or implied Plaintiff had been the cause of matters that were beyond Plaintiff's control and . . . wrongfully den[ied]" "promises, representations and policies" that had been made to Plaintiff. *Id.* ¶ 38. Plaintiff also alleges Defendant engaged in excessive payments or bribes to induce Defendant's agents and employees to issue opinions and decisions to provide fraudulent documentation to justify the decision to terminate Plaintiff. *See id.* ¶¶ 49-51.

To state a claim for IIED under Oklahoma law, a plaintiff must plausibly allege: "(1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe." *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991). While specific fact questions are for the jury, it is for the trial court to determine as a matter of law whether the defendant's conduct is sufficiently outrageous and whether the distress allegedly suffered by the plaintiff is sufficiently severe under this standard. *See id.* at 1388-89.

11

Defendant first argues that Plaintiff's allegations fail to reflect conduct by Defendant that was "outrageous" in the sense required to state an IIED claim under Oklahoma law. A plaintiff proceeding under an IIED theory must plead, and eventually prove, "that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).

The Court agrees that Plaintiff's nonspecific allegations of unmerited accusations and broken promises do not plausibly reflect sufficiently outrageous conduct to support this IIED claim. "[C]onduct is not extreme and outrageous if it amounts to no more than mere insults, indignities, or petty oppressions." *Daemi*, 931 F.2d at 1388. "Merely claiming outrageous conduct is insufficient." *Robbins Motorsports, L.L.C. v. Nat'l Fire & Marine Ins. Co.*, No. CIV-10-245, 2011 WL 2174911, at *3 (E.D. Okla. June 3, 2011). Relatedly, "workplace discrimination or harassment rarely rises to the level of extreme and outrageous conduct." *Barham v. K Mart Corp.*, No. 14-CV-0401, 2010 WL 3650684, at *6 (N.D. Okla. Sept. 14, 2010).

Defendant also argues that Plaintiff has failed to adequately plead that he "actually experienced emotional distress" that was "severe." *Daemi*, 931 F.2d at 1387. The distress required to sustain an IIED claim "must be of such a character that no reasonable person could be expected to endure it." *Id.* at 1389 (internal quotation marks omitted); *see also Robbins Motorsports*, 2011 WL 2174911, at *4 ("[W]hat constitutes severe emotional distress is severely restricted."). In this regard, Plaintiff alleges that he "fe[lt] impotent and

powerless to remedy the wrongs inflicted upon him" and that he was "vex[ed], injure[d] and annoy[ed]" by Defendant's actions. Compl. ¶¶ 38, 40. These allegations are insufficient to plausibly establish the requisite severe emotional distress under the governing pleading standards. *See Robbins Motorsports*, 2011 WL 2174911, at *5; *see also Rayburn v. Braum's Inc.*, No. CIV-20-1160-G, 2021 WL 781368, at *3 (W.D. Okla. Mar. 1, 2021) (citing cases).

For these reasons, Claim Nine shall be dismissed pursuant to Rule 12(b)(6).

### F.  *Plaintiff's Claim for Breach of Contract*

Plaintiff's allegations of breach of contract are as follows:

> 51. Plaintiff and Defendant entered into a contract of employment and that contract was in force for thirty two years.
>
> 52. At all material times the contract of employment was in full force and effect.
>
> 53. Plaintiff performed all conditions under the contract but Defendant breached the contract by terminating Plaintiff contrary to the terms of the contract.
>
> 54. Plaintiff is entitled to the benefits of working under the employment contract.  Although demand for employment and payment under that employment has been made, Defendant has refused and continues to refuse to employ Plaintiff and pay Plaintiff.  There is therefore the sum due in an amount in excess of $10,000.00, for breach of contract.

Compl. ¶¶ 51-54.

Under Oklahoma law, to recover under a breach-of-contract theory a plaintiff must show: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digit. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Defendant contends that Plaintiff has failed to adequately allege the second

13

element, as the pleading "fails to give even a hint of factual information to support the allegation that [Defendant] breached a contract with Plaintiff."  Def.'s Mot. at 19.

Even accepting Plaintiff's well-pled allegations as true, they do not adequately state a claim for relief based upon Defendant's breach of his employment contract.  Setting forth the conclusion that Defendant's termination of Plaintiff was in some manner "contrary to" the unidentified "terms" of an uncited contract does not "nudge [Plaintiff's] claim[] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Such a "formulaic recitation of the elements of" a breach-of-contract claim, "devoid of further factual enhancement," is "merely consistent with"—not a plausible suggestion of—Defendant's liability and "will not do" to state a claim for relief that can survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Accordingly, Claim Twelve must be dismissed.

### G.  Plaintiff's Fraud Claim

Plaintiff's Claim Six alleges that Defendant committed fraud by making representations, promises, and policies it knew to be false, "with the intent and purpose to deceive Plaintiff, the general public, and all others similarly situated, and to induce them to purchase and accept" them.  Compl. ¶ 27.  Plaintiff further alleges that Defendant "knew Plaintiff believed such representation, promises and policies to be true and that Plaintiff would and did justifiably rely on such promises."  *Id.*; *see also id.* ¶¶ 6, 28-29.

Defendant argues that that Plaintiff fails to plead this fraud claim with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).  *See* Def.'s Mot. at 20-21; Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the

circumstances constituting fraud . . . ."). A complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks omitted). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *Id.* (alteration, omission, and internal quotation marks omitted).

Plaintiff responds by citing the elements of a fraud claim under Oklahoma law, entirely ignoring Defendant's Rule 9(b) contentions. *See* Pl.'s Resp. at 10. This response is insufficient. Although other portions of the Complaint provide a hint as to the factual basis for this claim, such hinting is inadequate to provide the requisite fair notice to Defendant. *See RMD, LLC v. Nitto Ams., Inc.*, No. 09-2056, 2009 WL 10689046, at *4 (D. Kan. Nov. 17, 2009) (noting that a fraud claim "must set out the who, what, where, and when of the alleged fraud" (internal quotation marks omitted)). The claim does not include any locations or dates (beyond "[d]uring" Plaintiff's 32-year employment), and thus it fails to adequately allege the "time" and "place" of the false representations. *Koch*, 203 F.3d at 1236. Further, the pleading describes the allegedly fraudulent representations in vague terms that fail to sufficiently "set forth the . . . contents of the false representation[s]" or explain how the representations were "false." *Id.* (internal quotation marks omitted).

While "intent, knowledge, and other conditions of a person's mind may be alleged generally," Plaintiff's conclusory allegations and ambiguous references to unfulfilled promises are insufficient to plausibly plead "the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In addition, such conclusory allegations fail to plausibly show that

15

Defendant's promises were "known to be false at the time made." *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1195 (10th Cir. 1994) (noting that fraud may be established under Oklahoma law by showing: "(1) a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that a party would rely on it; and (4) reliance and resulting damage"); *see also* Fed. R. Civ. P. 8(a)(2), 12(b)(6); *Khalik*, 671 F.3d at 1192.

The Court therefore concludes that Plaintiff's Claim Six fails to allege the underlying facts with sufficient particularity to satisfy the pleading standard of Rule 9(b). *See Koch*, 203 F.3d at 1236-37. This claim shall be dismissed.

### H. Plaintiff's Claim for Interference with a Protected Property Interest

In Claim Seven, Plaintiff alleges that he had a protected property interest in the "benefits" of "financial assistance from representations, promises and policies" but that Defendant knowingly interfered with that interest "by failing to apply a reasonable interpretation of the facts, law or terms of the representations, promises and policies." Compl. ¶¶ 30, 32. Plaintiff further alleges that he sustained substantial compensable and economic losses as a result of Defendant's conduct. *See id.* ¶ 31.

Even when considered together with the pleading's introductory factual allegations (*id.* ¶¶ 4-11), which reference workers' compensation and Plaintiff's termination, these vague assertions fail to state an actionable claim against Defendant. Although a protected property interest possibly can arise from "a statutorily based entitlement," or from "a contractual agreement" combined with "assurances of continual employment," Plaintiff does not identify the relevant representations, promises, and policies in a manner that

16

permits the Court to discern the nature of his claim. *Ross v. Peters*, 846 P.2d 1107, 1118 nn.62-63 (Okla. 1993). Nor does he sufficiently plead his alleged benefits in them or explain how Defendant unreasonably interfered with such a protected property interest. "Given such a complaint, a defendant seeking to respond to [Plaintiff's] conclusory allegations . . . would have little idea where to begin." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (omission in original) (internal quotation marks omitted).

It follows that Plaintiff has not plausibly pled a claim based upon such interference upon which relief can be granted. *See id.* ("[The *Twombly*] requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."); *cf. Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (noting that, to have a property interest in a benefit, a person must "have a legitimate claim of entitlement to it"); *Ross*, 846 P.2d at 1118 ("[W]hether one has an entitlement depends on existing rules or understandings that stem from an independent source such as state law." (omission and internal quotation marks omitted)).

### I.  Plaintiff's Claim for Breach of Fiduciary Duty

Claim Eight of the Complaint asserts a claim for breach of fiduciary duty. *See* Compl. ¶¶ 33-37. In relevant part, Plaintiff alleges:

> 33. Defendant, by making the representations, promises and policies to Plaintiff and accepting thirty two years of service from Plaintiff, agreed and promised that if Plaintiff suffered as set forth in the facts above then Defendant would investigate the claim, using experienced supervisory personnel, provide Plaintiff with the information necessary to file informed and valid claims, to promptly and unambiguously follow those representations, promises and policies and that when Plaintiff incurred a need

17

> for those representations, promises and policies then the duty of Defendant to live up to those promises, procedures and policies would arise.
>
> 34. Plaintiff submitted claims to Defendant which gave rise to Defendant's duty to investigate and live up to those promises, representations and policies as alleged.  After this duty to live up to the representations, promises and policies arose, such benefits were no longer the property of Defendant but was held by Defendant for the sole benefit and use of Plaintiff, thereby creating a fiduciary relationship between Defendant and Plaintiff.  A beneficiary is entitled to a remedy which will put him in the position in which he would have been if the trustee had not committed the breach of trust.
>
> 35. Defendant has breached its fiduciary duty owed to Plaintiff by the acts or omissions set forth herein, all to Plaintiff's damage as alleged.

*Id.* ¶¶ 33-35.

"The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages." *Gray v. Acadia Healthcare Co.*, No. 19-cv-00338, 2020 WL 5996418, at *9 (E.D. Okla. Oct. 9, 2020) (citing *Graves v. Johnson*, 359 P.3d 1151, 1155 (Okla. Civ. App. 2015)).  Although the existence of a fiduciary duty is generally an issue of fact, *Horton v. Hamilton*, 345 P.3d 357, 364 (Okla. 2015), "[b]efore a plaintiff may proceed on a claim for breach of fiduciary duty the allegations in the complaint must be sufficient to allege the existence of such a duty." *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1192 (W.D. Okla. 2019).

Defendant primarily argues that Plaintiff fails to allege sufficient facts regarding the existence of a fiduciary relationship.  "[A] fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation."

*Lowrance v. Patton*, 710 P.2d 108, 112 (Okla. 1985). Plaintiff responds by citing authority for the proposition that "[a] fiduciary duty can arise from informal relationships such as business relationships" and by arguing, "Defendant had a fiduciary duty to pay Plaintiff, which was breached by Defendant who[,] rather than pay, attacked Plaintiff and fired him." Pl.'s Resp. at 10-13 (citing *Sellers v. Sellers*, 428 P.3d 230 (Okla. 1967)).

Having reviewed the pleading and the relevant authorities, the Court concludes that Plaintiff's unadorned allegations of an employment relationship and references to undefined "promises" and "claims" do not plausibly support an inference of a fiduciary relationship. As noted, the Court may not look to facts that Plaintiff has not alleged or assume that Defendant has acted in ways that have not been pleaded. *See Associated Gen. Contractors of Cal.*, 459 U.S. at 526. It cannot be reasonably inferred from the allegations of the Complaint that Defendant owed a fiduciary duty to Plaintiff. *Cf. Jackson v. Educ. & Emp. Ministry*, No. CIV-14-1364-D, 2016 WL 3211989, at *6 (W.D. Okla. June 9, 2016) ("[T]here is generally no fiduciary relationship flowing from an employer to an employee." (internal quotation marks omitted) (applying Oklahoma law)). This claim shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

J. *Plaintiff's Conversion Claim*

Plaintiff's final claim is that on or about March 18, 2017, Defendant "converted to its own use the money represented by Plaintiff's paycheck" and "attempted to justify this conversion as a setoff for money overpaid by Defendant to Plaintiff." Compl. ¶ 55.

Defendant argues that this claim must be dismissed because Oklahoma does not recognize a cause of action based upon the conversion of money. Although Plaintiff's

Response notes that the Oklahoma Supreme Court has used the term "conversion" regarding client funds in the context of attorney disciplinary matters, Defendant is correct that "[t]he general rule in Oklahoma is that only *tangible personal property* may be converted." *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 608 (Okla. 1992); *see also Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1249 (N.D. Okla. 2011) ("When a plaintiff seeks to recover money, there is no conversion.").

Accordingly, Plaintiff's conversion claim based upon Defendant's alleged taking of money fails to state a claim upon which relief can be granted. *See, e.g.*, *Two Sisters, LLC v. Russell*, No. CIV-20-492-G, 2020 WL 6808783, at *3 (W.D. Okla. Nov. 19, 2020).

## CONCLUSION

For the reasons outlined herein, Defendant's Motion to Dismiss (Doc. No. 24) is GRANTED.  Plaintiff's claims against Defendant are dismissed in their entirety without prejudice.  A separate judgment shall be entered.

IT IS SO ORDERED this 30th day of March, 2022.

_____
CHARLES B. GOODWIN
United States District Judge